482 So.2d 1354 (1986)
THE FLORIDA BAR, Complainant,
v.
Alan B. FIELDS, Jr., Respondent.
No. 65650.
Supreme Court of Florida.
January 23, 1986.
Rehearing Denied March 6, 1986.
*1355 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David G. McGunegle, Bar Counsel and Diane J. O'Malley, Sp. Asst. Bar Counsel, Orlando, for complainant.
Alan B. Fields, Jr., of Dowda and Fields, Palatka, in pro per.
Frank M. Gafford, Lake City, for respondent.
PER CURIAM.
This disciplinary proceeding by The Florida Bar against Alan B. Fields, Jr., a member of the Bar, is before us on a four-count complaint of the Bar and report of the referee. The referee's report and record have been filed with this Court pursuant to Florida Bar Integration Rule, article XI, Rule 11.06(9)(b). Respondent has petitioned for review of the referee's findings of fact as to Counts I, III, and IV and recommendations of guilt and discipline which are as follows:[*]

As to Count I

(07B84C04  Vicky Lindley)
I find specifically that:
"1. Around May, 1980, Vicky Lindley (now Weaver) hired the respondent to file a paternity suit relating to her youngest daughter and to provide other relief with respect to title to her property... .
"2. At that time, respondent did not discuss a fee arrangement with Ms. Lindley nor was any fee agreement signed by her. Finance or interest charges on unpaid principal amount of the fee also was not discussed. Ms. Lindley was advised that typically the court would order the ex-husband to pay the attorney's fees. She paid respondent $100.00 as a deposit... .
"3. In October, 1980, Ms. Lindley became impatient with the case progress. Someone in respondent's office advised her the other attorney was dragging his feet which proved not to be the case since some delay apparently was caused by the respondent. Ms. Lindley then informed the respondent she no longer wished his services and subsequently hired James W. Sibrey in November.
"4. In November, 1980, respondent sent letters to Ms. Lindley through Mr. Sibrey enclosing a motion and consent for leave to withdraw and later a bill for $672.36. The bill, dated November 25, 1980 gave notice of a one-and-a-half percent per month finance charge on the outstanding balance which notice also was on prior September and October bills... .
"5. By letter from Mr. Sibrey dated January 20, 1981, Ms. Lindley requested an itemization of respondent's charges. Respondent replied by letter dated January 25, 1981 indicating he would itemize his charges in court and thereafter refused further accounting. In fact, Ms. Lindley stated she never has received more than the monthly billing statements from respondent and only saw a copy of the account at the referee hearing... .
"6. In July, 1983, almost two-and-one-half years after his January 22, 1981 letter, respondent's firm brought suit in Putnam County Court against Ms. Lindley alleging a debt owed of $995.95 which included the principal plus a finance charge or interest for the period. Ms. Lindley had been billed sporadically if at all during this period. She stated she did not receive any statements for a long period of time... . In fact, respondent's records show a finance charge of $259.75 was posted on March 29, 1983 for the February, 1981 through March, 1983 period, and that she was sent *1356 a bill for the amount claimed in late June, 1983. Respondent's bookkeeper testified the posting and billing had been done preparatory to suit and probably nothing had been done in the interim... . The referee notes that in computing the finance charge, respondent's bookkeeper was adding the monthly charge to both the unpaid principal amount and the unpaid previous finance charges thereby making the annual percentage rate in excess of the maximum allowed by statute of 18% per year... .
"7. Judgment was subsequently entered against Ms. Lindley in the total amount of $1,045.59 which included the $995.95 sued for plus costs. The judgment remains unsatisfied. Ms. Lindley did not sign a written contract authorizing the one-and-one-half percent per month finance charge on the outstanding principal balance of her bill or agree to same. Moreover, the fee arrangements were not clearly discussed with her. Respondent included in his lawsuit for the fees the finance charge for approximately two-and-one-half years for which he and his staff had done little to service during that period of time according to his own records. This referee notes that the charge should properly have been denominated as interest at the statutorily allowable rate of 6% prior to June 30, 1982, and 12% thereafter for matters without contracts."
... .

As to Count III

(07B84C13  Dede Sharples)
I find specifically that:
"13. Respondent was retained by Ms. Sharples in December, 1978 to arrange for an increase in her child support. At that time, she was receiving approximately $120.00 per month for both children, one of whom was approaching the age of eighteen. The order setting forth the child support had occurred some ten years previously. She made respondent aware the husband was amenable at the time of the divorce to voluntary increases in the future if warranted... . Ms. Sharples also stated she made respondent aware her former husband was a man of means... . At the end of the case in September, 1979, the court increased the monthly child support to $200.00 for the one child... .
"14. During the initial meeting, respondent advised her the court normally would make her ex-husband pay her attorney's fees although he claims he made her aware that she would be primarily liable. Ms. Sharples also testified the bookkeeper advised her the desired work would probably take approximately very few hours and she paid a partial retainer of $50.00. She advised both respondent and the bookkeeper her resources were quite limited... . Ms. Sharples was furnished with a fee agreement by his bookkeeper a few days later. The agreement provided for an hourly rate of $85.00 per hour and a finance charge of one-and-one-half percent per month or 18% per year on the unpaid balance of the bill. After reading it, she determined not to sign it and left the office... . This was not brought to respondent's attention until his representation ceased.
"15. Beginning the month after the initial visit, Ms. Sharples received monthly bills from the respondent. The first statement had a balance of $178.00. This statement noted a one-and-one-half percent per month finance charge. Thereafter, Ms. Sharples attempted on many occasions to contact the respondent about the growing bills and finance charges without success. She testified in her discussions with respondent's bookkeeper she was continually told the statements were routine and not to worry about it because they expected the ex-husband to have to pay the fee... .
"16. In October, 1979, Ms. Sharples received a final bill for legal services and expenses from respondent stating a balance due of $2,052.46. On or about January 14, 1980, Ms. Sharples met with respondent after the court ordered her ex-husband to pay $131.00 in costs. She advised respondent she could not pay his bill and he agreed to reduce same but never did... . In July, 1980, respondent's firm brought suit against Ms. Sharples in Putnam County Court in the amount of $2,352.00 including *1357 additional interest or finance charges of 18% per year from October 25, 1979. In 1983, respondent was awarded judgment in excess of $3,800.00 including interest of $1,429.26. After an appeal, the judgment was set aside and remanded to the county court where the amount was lowered to approximately $3,300.00 in 1984 reflecting allowance only of interest at the statutory rate for matters without contract as opposed to the finance charge of one-and-one-half percent per month for the period subsequent to the filing of suit.
"17. In this case, respondent's bookkeeper also computed the monthly finance charge not only on the unpaid balance but included the unpaid charges so that they were charging interest on interest resulting in a usurious amount in excess of the maximum 18% per year for interest and/or finance charges permitted by law. In fact, she used this method of posting for all unpaid bills which procedure respondent did not properly supervise... .
"18. Respondent was successful in securing an increase in the child support from approximately $120.00 to $200.00 from the out-of-state ex-husband. For his services, the respondent charged over $2,000.00 which included finance charges in excess of 18% per year for the approximately ten months prior to October, 1979 when he sent Ms. Sharples a final bill. Three attorneys were questioned as to the reasonableness of respondent's fee. Two indicated that respondent had done considerable work in the file and obviously had incurred the time spent. However, both indicated that much of what respondent had done was not warranted by the case. The two also stated a reasonable fee would be between $500.00 and $750.00. The third attorney, who represented respondent in his fee suits, had provided an affidavit in the child custody proceeding and had pegged a reasonable amount at $1,350.00.
"19. I find that respondent's fee of $2,000.00 is clearly excessive under the circumstances given the criteria of Disciplinary Rule 2-106. I note the length of time between the previous order and this case of some ten years, the apparent willingness to increase child support if the circumstances have changed on the part of the husband, the inflationary impact over the past ten years and testimony of the other attorneys as to respondent's handling of the case. I further take judicial notice that respondent, acting as co-counsel in this instant case, filed lengthy and considerable motions and discovery, most of which were of little value in narrowing the issues and readying this case for final hearing.
"20. Respondent also filed suit against his former client and included in that suit improperly computed finance charges which were never agreed to either orally or in writing by Ms. Sharples."

As to Count IV
I find specifically that:
"21. Respondent's law firm has filed suit in at least twenty-eight cases in Putnam County Court during 1982 and 1983 in an effort to collect fees from clients and ex-clients... . Respondent's firm of Dowda and Fields, P.A. is, in effect, solely the respondent since Mr. Dowda has been retired for several years and no longer receives a salary from the firm... . Only seven fee suits were filed by approximately thirty-two other practicing Palatka attorneys during the same period...
"22. These suits were filed purportedly at the recommendation of respondent's accountant and for amounts from less than $100.00 to an excess [of a] few thousand dollars. At least three were for under $200.00. In fact, they ran the gamut... .
"23. Opinions of the Professional Ethics Committee of The Florida Bar are only advisory. However, in this case the respondent attached a copy of a staff opinion enclosing Ethics Opinion 73-14 to paragraph 5 of his affirmative defenses to the amended complaint. That opinion discusses the criteria to be utilized to define whether a client is perpetrating fraud or a gross imposition on the attorney which is the criteria set forth in Ethical Consideration 2-23 for suing clients for fees which *1358 states a lawyer "... should not sue a client for a fee unless necessary to prevent fraud or gross imposition by the client." The criteria in this opinion are that the client should owe the attorney a substantial fee, have the ability to pay and refuse to pay it. It appears many of the fees sued for by the respondent were not substantial in nature. He further testified that a third of those proved to be totally uncollectible and services of process could not be made on another third... . Finally, it is doubtful whether the clients had firmly refused to pay prior to the imposition of suit. For example, Ms. Lindley merely requested an accounting which was never furnished to her and Ms. Sharples had little luck in communicating about the fee or reaching an understanding with the respondent. Mr. Hodges had paid much of his $300.00 fee and was sued for about $100.00 plus costs after he discussed payment problems with the bookkeeper...
"24. Although the number of fee suits is not inordinate considering respondent's general pending caseload of in excess of 400, it appears he does not follow any set criteria in determining whether to file suit for fees thereby adding additional costs and/or interest... . It also matters not that respondent has written off several unpaid fees every year  a problem common to many attorneys. Although Ethical Consideration 2-23 is not a mandatory Disciplinary Rule, respondent's conduct in this regard clearly is not within its parameters."
III. Recommendations as to Whether or Not the Respondent Should be found Guilty: As to each count of the complaint I make the following recommendations as to guilt or innocence:

As to Count I
"I recommend the respondent be found guilty and specifically that he be found guilty of violating Disciplinary Rule 1-102(A)(6) of The Florida Bar's Code of Professional Responsibility for conduct adversely reflecting on his fitness to practice law by improperly charging finance charges or interest without agreement of the client and/or proper disclosure and for permitting the charge to be calculated both on the unpaid principle balance and the unpaid accumulated finance/interest charges rendering a usurious rate in excess of the statutorily permitted 18% per year. I recommend the respondent be found not guilty of violating Rule 11.02(3)(a) of Article XI of The Florida Bar's Integration Rule for action contrary to honesty, justice and good morals since it appears the improper finance/interest charge calculation was a result of lax office procedure and not intentional wrongdoing."
... .

As to Count III
"I recommend respondent be found guilty and specifically he be found guilty of violating the following Disciplinary rules of The Florida Bar's Code of Professional Responsibility: 1-102(A)(6) for engaging in conduct adversely reflecting on his fitness to practice law for charging a finance/interest charge without any authorization from the client and/or proper disclosure and thereafter suing on same and permitting improper calculation of the rate resulting in one in excess of the statutory maximum; 2-106(A) and 2-106(B) for charging a clearly excessive fee; 3-104 for failure to properly supervise and exercise a high standard of care to insure compliance by nonlawyer personnel with The Florida Bar's Code of Professional Responsibility resulting in unclear fee arrangements with the client, failure to convey information from the client to the attorney and improper computation of the finance/interest charges resulting in a usurious rate in excess of the statutory maximum. Although respondent was responsible, he did not properly supervise the billing procedure. I recommend the respondent be found not guilty of violating Rule 11.02(3)(a) of Article XI of The Florida Bar's Integration Rule for conduct contrary to honesty, justice or good morals in that I do not find respondent's actions were done willfully with intent to harm the client or that the *1359 imposition of the excess finance/interest charge was an intentional policy."

As to Count IV
"I recommend the respondent be found guilty of violating Disciplinary Rule 1-102(A)(6) of The Florida Bar's Code of Professional Responsibility for conduct adversely reflecting on his fitness to practice law by instituting fee suits against clients and former clients without having determined whether the client had the ability to pay same, that the fee in question was substantial in nature, or that the client had steadfastly refused to pay respondent's fee. I note careful consideration of those criteria is necessary to determine whether the client is committing fraud or a gross imposition on the attorney, thus warranting suit."
... .
V. Recommendation as to Disciplinary Measures to be Applied: I recommend the respondent receive a public reprimand as provided in Rule 11.10(3) and that the reprimand be administered by personal appearance before the Board of Governors of The Florida Bar.
Respondent challenges the referee's findings of fact and recommendations of guilt. We note that such findings and recommendations will be upheld unless clearly erroneous or without support in the evidence. The Florida Bar v. Hoffer, 383 So.2d 639 (Fla. 1980); The Florida Bar v. Hirsch, 359 So.2d 856 (Fla. 1978). The referee's findings and recommendations are amply supported by the record before us. Respondent himself professed to the referee that his contentious and unresponsive answer to Lindley's request for an itemized bill was a result of animus he felt toward her new attorney and that the numerous fee suits filed during the period in question were instituted as a result of his accountant's advice to clear his books by showing an effort to collect bad debts. Under Ethical Consideration 2-23, the attorney is responsible for making an individual determination on a client-by-client basis as to whether to institute suit. This responsibility cannot be transferred to an accountant. Respondent's argument that his constitutional right to sue clients is violated is unpersuasive under these circumstances.
Respondent argues that a public reprimand is excessive and that he should receive at most a private reprimand. We do not agree. It is clear from the record that respondent has been derelict in failing to reach fee agreements with his clients before representing them, in failing to communicate with his clients concerning their legitimate concerns and questions on fees, and in failing to properly supervise nonlawyer employees.
Finally, respondent argues that the costs assessed against him are excessive. We disagree. The referee noted, and the record confirms, that respondent in the instant action, as co-counsel, filed "lengthy and considerable motions and discovery, most of which were of little value in narrowing the issues and readying this case for final hearing."
Having carefully reviewed the record, we approve the findings and recommendations of the referee. Accordingly, Alan B. Fields, Jr. is hereby publicly reprimanded, and the publication of this order and judgment shall constitute the public reprimand.
Judgment for costs in the amount of $2,064.49 is hereby entered against respondent, for which sum let execution issue. Interest at the statutory rate is to accrue on all costs not paid within thirty (30) days of entry of this Court's final order of discipline, unless the time for payment is extended by the Board of Governors.
It is so ordered.
OVERTON, McDONALD, SHAW and BARKETT, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which BOYD, C.J., and ADKINS, J., concur.
EHRLICH, Justice, concurring in part and dissenting in part.
I do not take issue with the findings of the referee with respect to guilt. The matters *1360 at issue reflect poor business judgment and inadequate supervision over the business aspect of respondent's practice. In my opinion, a private reprimand is the proper punishment.
BOYD, C.J., and ADKINS, J., concur.
NOTES
[*] The referee recommended a finding of not guilty on Count II. Respondent also seeks review of the assessed costs.